# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| DOUBLETAP DEFENSE, LLC | |
| *Plaintiff*, | **CIVIL ACTION NO.** |
| vs. | 8:18-cv-00492 |
| HORNADY MANUFACTURING CO. | |
| *Defendant*. | |

## SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT

COMES NOW Plaintiff DOUBLETAP DEFENSE, LLC (hereinafter "DTD"), by and through its undersigned attorneys, and brings this action for breach of contract against Defendant HORNADY MANUFACTURING CO. (hereinafter, "Hornady Mfg.") and alleges as follows:

## INTRODUCTION

This lawsuit arises out of a failure to honor an indemnity agreement. DTD designed and produced the DoubleTap Tactical Pistol, which displayed a "DOUBLETAP" trademark. In or around March 13, 2013, as part of settling a trademark infringement lawsuit brought by Hornady Mfg., DTD and Hornady Mfg. entered into a trademark assignment and license agreement whereby DTD assigned all right, title, and interest in the trademark to Hornady Mfg.; for a fee, Hornady Mfg. licensed the trademark back to DTD; and Hornady Mfg. agreed to indemnify DTD for its use of the trademark. After events giving rise to an obligation to indemnify DTD transpired, Hornady Mfg. refused, and continues to refuse, to indemnify DTD per the terms of their 2013 agreement.

## JURISDICTION AND VENUE

### 1.

Pursuant to 28 U.S.C. § 1332, the Court has subject matter jurisdiction over this dispute because the plaintiff and the defendant are citizens of different states, and the amount in controversy in this dispute, exclusive of interest and costs, exceeds seventy-five thousand dollars and no cents ($75,000.00).

### 2.

The Court has jurisdiction over Hornady Mfg., because it is a citizen of the State of Nebraska with its principal place of business located within the District of Nebraska.

### 3.

Pursuant to 28 U.S.C. § 1391(b)(1) and (2), venue is proper in the District of Nebraska, because Hornady Mfg. conducts business within the geographical boundaries of this district, and a substantial part of the events or omissions giving rise to DTD's claims occurred in this district.

## THE PARTIES

### 4.

DTD is a Georgia domestic limited liability company with its principal office address located at 8215 Roswell Road, Building 800, Atlanta, Georgia 30350. Marvin Dufner is DTD's only member. He is a citizen of the State of Missouri.

### 5.

Hornady Mfg. is a Nebraska domestic corporation. It may be served through its president, Stephen D. Hornady, by a second original at its principal office address located at 3625 Old Potash Highway, Grand Island, Nebraska 68803.

## FACTUAL BACKGROUND

### DoubleTap Defense and the Tactical Pistol

6.

On December 22, 2010, Central Holding Corporation ("CHC") filed a trademark application with the USPTO under Serial No. 85-204480 seeking registration of the trademark "DOUBLETAP" in connection with firearms— specifically, "pistols" (the "Application").

7.

On June 11, 2012, CHC assigned the Application in the mark to Heizer Technologies, LLC.[1]

8.

At, and before, the 2012 SHOT Show, a national firearms tradeshow, DTD used the DOUBLETAP trademark to promote the forthcoming DoubleTap Tactical Pistol (the "Pistol") it intended to manufacture and sell.

9.

Available in either .45 ACP or 9 mm, and a titanium or aluminum frame, the Pistol carries two rounds and houses two additional rounds in its integral grips.

10.

The DOUBLETAP mark (hereinafter referred to as the "Provisional Mark") is permanently etched into the Pistol's barrel and its frame above the grip panel.

---

[1] Heizer Technologies, LLC changed its name to Double Tap Defense, LLC on November 19, 2012. Double Tap Defense, LLC, in turn, changed its name to DoubleTap Defense, LLC on December 6, 2012 (eliminating the space between "Double" and "Tap"). For clarity and ease of reading, the complaint will refer to each of these entities as DTD irrespective of date and time.

CERTAIN OTHER COMPETING TRADEMARKS

11.

Hornady Mfg. is a manufacturer of, among other things, bullets and ammunition for sportsmen, law enforcement personnel, and military professionals.

12.

As part of Hornday Mfg.'s Law Enforcement Performance Group's line of products, it markets and sells ammunition bearing its registered TAP mark. Hornady Mfg. has sold various products under this mark since 1997.

13.

Double Tap Ammunition, Inc., a Utah corporation, which was founded in 1992, and has no affiliation with DTD in any way whatsoever, is a manufacturer of ammunition specializing in hand-loaded rounds and uncommon calibers. Since at least 2006, its packaging has displayed the unregistered marks DOUBLETAP (one word) or DOUBLE TAP (two words) (hereinafter referred to collectively as the "Unregistered Mark").

HORNADY MFG.'S TAP MARK LITIGATION WITH
DTD AND DOUBLE TAP AMMUNITION, INC.

14.

On January 5, 2011, Hornady Mfg. brought suit against Double Tap Ammunition, Inc., in the United States District Court for the District of Utah, alleging Double Tap Ammunition Inc.'s use of the Unregistered Mark infringed on Hornady Mfg.'s registered TAP mark in violation of the Lanham Act.

15.

On June 11, 2012, Hornady Mfg. brought a second suit against DTD, in the United States District Court for the District of Nebraska, alleging violations of the Lanham Act for DTD's use of the Registered Mark claiming that it also infringed on Hornady Mfg.'s TAP mark.

16.

To resolve its dispute with Hornady Mfg., DTD agreed to assign all right, title, and interest in the Provisional Mark to Hornady Mfg.; to abandon the Application; and pay Hornady Mfg. a $25,000 license fee, along with other good and valuable consideration, in exchange for which Hornady Mfg. agreed to license the Provisional Mark back to DTD. *See* "2013 Trademark Assignment and Licensing Agreement" (the "Agreement") a true and accurate copy of which is attached hereto as **Exhibit "1."**

17.

In exchange for the foregoing, Hornady Mfg. also agreed to indemnify and hold harmless DTD, the licensee:

> FROM AND AGAINST ALL CLAIMS, DEMANDS, LAWSUITS, DAMAGES, LIABILITIES, JUDGMENTS, COSTS, AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) ARISING FROM OR RELATING TO . . . LIABILITY RELATED TO TRADEMARK INFRINGEMENT CLAIMS FOR [DTD's] USE OF THE MARKS AS CONTEMPLATED BY THIS AGREEMENT.

Exhibit 1 at § 7.

18.

The 2013 Trademark Assignment and Licensing Agreement defines "Mark" or "Marks" as "DOUBLETAP, including word, stylized and word design variations thereof." *See* Exhibit B to Exhibit 1.

19.

The 2013 Trademark Assignment and Licensing Agreement also contains a choice of law provision specifying Nebraska law with respect to the construction of the agreement and disputes arising out of the agreement.

20.

On March 6, 2013, both Hornady Mfg. and DTD executed the Agreement. *See* "March 2013 Counsel Correspondence," a true and accurate copy of which is attached hereto as **Exhibit "2."**

21.

Therein, Hornady Mfg., acting through its counsel, reminded DTD, through its counsel, to file with the Patent and Trademark Office its express abandonment of the Provisional Mark's trademark application pursuant to Section 2.2 of the Agreement.

22.

Subsequent to DTD's execution of the agreement, counsel for DTD alerted Hornady Mfg.'s counsel to the existence of at least three businesses using the DOUBLETAP mark and requested that Hornady Mfg., as licensor, under the 2013 Trademark Assignment and Licensing Agreement, honor its obligation address possible third party infringement by others who might claim an interest in the DOUBLETAP mark.

23.

In response, Hornady Mfg., through its counsel, transmitted at least three cease and desist letters to possible third party infringers who might claim an interest in the DOUBLETAP mark.

24.

On March 7, 2013 Hornady Mfg., through its counsel, via certified mail and email, transmitted a cease and desist letter to DoubleTapDefense.com, which was using the DOUBLETAP mark to sell firearms-related services, specifically concealed carry classes, through the foregoing website. *See* "Letter No. 1," a true and accurate copy of which is attached hereto as **Exhibit "3."**

25.

Hornady Mfg., through its counsel, demanded that DoubleTapDefense.com immediately cease using the DOUBLETAP mark on its website in connection with the sale of firearms-related services; disable and surrender the DoubleTapDefense.com domain name; and remove the DOUBLETAP mark from any and all other websites, marketing materials, and/or other venues through which DoubleTapDefense.com or any affiliated entity may be offering any firearms-related products or services for sale. *See* Exhibit 3.

26.

On March 7, 2013 Hornady Mfg., through its counsel, via certified mail and email, transmitted a cease and desist letter to DoubleTapGuns.com, which was using the DOUBLETAP mark to sell silencers for a variety of firearms through the foregoing website. *See* "Letter No. 2," a true and accurate copy of which is attached hereto as **Exhibit "4."**

27.

Hornady Mfg., through its counsel, demanded that DoubleTapGuns.com immediately cease using the DOUBLETAP mark on its website in connection with the sale of firearms-related services; disable and surrender the DoubleTapGuns.com domain name; and remove the DOUBLETAP mark from any and all other websites, marketing materials, and/or other venues

through which DoubleTapGuns.com or any affiliated entity may be offering any firearms-related products or services for sale. *See* Exhibit 4.

28.

On March 7, 2013 Hornady Mfg., through its counsel, via certified mail and email, transmitted a cease and desist letter to Double Tap Holsters, which was using the DOUBLETAP mark to sell custom holsters and accessories for firearms through its website, DoubleTapFirearms.com. *See* "Letter No. 3," a true and accurate copy of which is attached hereto as **Exhibit "5."**

29.

Hornady Mfg., through its counsel, demanded that Double Tap Holsters immediately cease using the DOUBLETAP mark on its website in connection with the sale of firearms-related services; disable and surrender the DoubleTapFirearms.com domain name; and remove the DOUBLETAP mark from any and all other websites, marketing materials, and/or other venues through which DoubleTapFirearms.com or any affiliated entity may be offering any firearms-related products or services for sale. *See* Exhibit 5.

30.

On March 26, 2013, pursuant to Section 2.2 of the Agreement, DTD (then known as Heizer Technologies, LLC), filed its "Notice of Express Abandonment" with the Patent and Trademark Office thereby expressly abandoning its trademark application for the Provisional Mark. *See* "Notice of Express Abandonment," a true and accurate copy of which is attached hereto as **Exhibit "6."**

31.

While the dispute between DTD and Hornady Mfg. resolved itself through the foregoing agreement and Hornady Mfg.'s performance thereunder, Hornady Mfg.'s dispute with Double Tap Ammunition, Inc. continued in Utah.

32.

On April 24, 2013, the United States District Court for the District of Utah denied Hornady Mfg.'s motion for summary judgment and granted Double Tap Ammunition, Inc.'s motion for summary judgment. In doing so, the court ruled that Double Tap Ammunition, Inc.'s Unregistered Mark did not infringe on Hornady Mfg.'s TAP mark.

33.

Hornady Mfg. appealed the foregoing ruling to the United States Court of Appeals for the Tenth Circuit, which, on March 19, 2014, affirmed the Utah District Court's ruling. No appeal was taken from this proceeding and, the time to appeal this ruling has expired.

DOUBLE TAP AMMUNITION, INC.'S CEASE AND DESIST

34.

On June 9, 2014, counsel for Double Tap Ammunition, Inc. sent a cease and desist letter to DTD alleging that DTD's use of the Provisional Mark—licensed from Hornady Mfg.— infringed on Double Tap Ammunition, Inc.'s Unregistered Mark and was likely to cause consumer confusion. *See "Cease and Desist Letter"* a true and accurate copy of which is attached hereto as **Exhibit "7."**

35.

Double Tap Ammunition, Inc. demanded that DTD cease all use of the Provisional Mark and/or association of the Provisional Mark in connection with promotional and advertising

materials, including websites, for firearms and ammunition. *See* Exhibit 6. DTD has since ceased selling the Pistol.

36.

On June 10, 2014, DTD transmitted via email to Hornady Mfg. and its counsel copies of the Cease and Desist Letter.

37.

On June 13, 2014, DTD, through its Georgia counsel, transmitted to Hornady Mfg.'s Utah counsel, via FederalExpress Overnight, copies of the cease and desist letter and a separate letter demanding that Hornady Mfg. honor the indemnity and hold harmless provision set forth in the 2013 Trademark Assignment and Licensing Agreement.

38.

Hornady Mfg., through its Utah counsel, refused, and continues to refuse, to indemnify, defend, protect, and hold harmless DTD in connection with the Provisional Mark and Double Tap Ammunition, Inc.'s demands—such refusal being directed to DTD through its Georgia counsel.

39.

At no time whatsoever has Hornady Mfg., or anyone acting on its behalf, demanded or requested that DTD cause Double Tap Ammunition, Inc., or any other entity or individual, to assign to Hornady Mfg. all interests claimed in the DOUBLETAP mark as described in the Agreement and Letters No. 1–3.

## COUNT I
## <u>BREACH OF CONTRACT</u>

40.

DTD reiterates and re-alleges each of the allegations set forth in Paragraphs 1—37 as if fully set forth herein verbatim.

41.

The 2013 Trademark Assignment and Licensing Agreement, attached hereto as Exhibit 1, is a valid and binding agreement between DTD and Hornady Mfg.

42.

DTD has complied with each and every one of its obligations under the 2013 Trademark Assignment and Licensing Agreement.

43.

All conditions precedent to the bringing of this action have occurred or have otherwise been waived.

44.

Hornady Mfg.'s continued refusal to indemnify, defend, protect, and hold harmless DTD in connection with the DOUBLETAP mark is a material breach of the 2013 Trademark Assignment and Licensing Agreement.

45.

As a direct and proximate result of the foregoing breaches of contract, DTD has been financially harmed in an amount to be proven at trial.

46.

This financial harm includes damages, both direct and special, which include, but are not limited to, the cost of unsold inventory; the cost of unused packaging; and lost profits.

## **PRAYER FOR RELIEF**

WHEREFORE, DoubleTap Defense, LLC respectfully requests that this Court:

(1)     Enter judgment in favor of DoubleTap Defense, LLC as to Count I for Breach of Contract in an amount to be determined at trial.

(2)     Award DoubleTap Defense, LLC its costs, expenses, and reasonable attorneys' fees incurred in bringing this action; and

(3)     Award DoubleTap Defense, LLC such other relief that the Court deems just and proper under the circumstances.

Respectfully submitted, this _____ day of November, 2018.

                                        **KAUFMAN & FORMAN, P.C**.

8215 Roswell Road, Building 800               Robert J. Kaufman
Atlanta, Georgia 30350-6445                   Georgia Bar No. 409197*
T: (770) 390-9200                             Matthew D. Treco
F: (770) 395-6720                             Georgia Bar No. 802181*
rjk@kauflaw.net                               *Admitted Pro Hac Vice*
mdt@kauflaw.net
*Counsel for Plaintiff*

*I:\WP\CW\8361-002\Drafts\Amended Complaint - Second\Second Amended Complaint 12Nov18.docx*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I electronically filed with foregoing **SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT** with the Clerk of Court using the CM/ECF, which will automatically send email notification of such filing to all counsel of record.

This _____ day of November, 2018.

**KAUFMAN & FORMAN, P.C**.

/s/ Robert J. Kaufman

8215 Roswell Road, Building 800      Robert J. Kaufman
Atlanta, Georgia 30350-6445      Georgia Bar No. 409197*
T: (770) 390-9200      Matthew D. Treco
F: (770) 395-6720      Georgia Bar No. 802181*
rjk@kauflaw.net      *Admitted Pro Hac Vice*
mdt@kauflaw.net
*Counsel for Plaintiff*

# EXHIBIT 1

## TRADEMARK ASSIGNMENT AND LICENSE AGREEMENT

THIS LICENSE AGREEMENT (hereinafter, the "Agreement") is entered into as of _March 13_, 2013 (the "Effective Date") by and between Hornady Manufacturing Company, a Nebraska corporation ("Licensor"), and Central Holding Corporation, a Missouri corporation and DoubleTap Defense, LLC, a Georgia limited liability company, f/k/a Heizer Technologies LLC, a Georgia limited liability company (collectively "Licensee"). Licensor and Licensee may be referred to as a "Party" or, collectively, as the "Parties."

### RECITALS

A.  Since at least 1997, Licensor has used the TAP mark to identify bullets, ammunition, reloading tools and accessories for various types of firearms, including hand guns and rifles. The United States Patent and Trademark Office ("USPTO") has granted Licensor the following federal registrations for its TAP family of marks: U.S. TM Reg. No. 2,529,278 (TAP), U.S. TM Reg. No. 2,259,161 (TAP CQ), U.S. TM Reg. No. 2,433,696 (TAP URBAN), and U.S. TM Reg. No. 2,433,695 (TAP PRECISION) (each a "TAP Mark" and, collectively, the "TAP Marks"). Licensor also enjoys common law trademark rights in the TAP Marks. Licensor has expended considerable expense and resources in advertising and promoting its goods and services under its registered and non-registered marks and as a result has acquired substantial goodwill and consumer recognition.

B.  On December 22, 2010, Central Holding Corporation ("CHC") filed a trademark application with the USPTO under Serial No. 85-204480 (the "Application") seeking registration of the mark DOUBLETAP in connection with firearms, specifically "Pistols."

C.  Heizer Defense LLC ("Heizer"), in its name at and before the 2012 SHOT Show and on the www.heizerdefense.com website, began marketing under the DOUBLETAP mark and had intended to manufacture a pistol under the DOUBLETAP mark.

D.  On August 31, 2011, Hornady filed a Notice of Opposition to the Application with the Trademark Trial and Appeal Board ("TTAB"), No. 91201430 (the "Opposition"), asserting that Heizer's use of the DOUBLETAP mark for pistols will be likely to be confused with Hornady's TAP MARKS.

E.  On June 11, 2012, Hornady filed a lawsuit in the United States District Court for the District of Nebraska asserting trademark infringement against Heizer and CHC for using the DOUBLETAP mark, case no. 4:12-cv-03117, entitled *Hornady Manufacturing Company v. Heizer Firearms, LLC, et al.* (the "Action"). The filing of the Action resulted in a stay of the Opposition.

F.  On June 11, 2012, CHC assigned the Application in the Trademark to Heizer Technologies, LLC.

G.  Licensee recently began using certain DOUBLETAP marks, including word, stylized and word, and design variations of DOUBLETAP (collectively, the "DOUBLETAP Marks"), in connection with pistols/firearms that could fire ammunition sold by Licensor under the TAP Marks.

H.     Licensee now acknowledges that its use of the DOUBLETAP Marks, as alleged in the Action, is likely to cause confusion with Hornady's TAP Marks. Accordingly, and to avoid confusion in the marketplace, Licensee has agreed to assign, and cause to be assigned, all rights in the DOUBLETAP Marks and any related marks to Licensor, and Licensor has agreed to license the DOUBLETAP Marks to Licensee on the terms and conditions set forth in this Agreement.

AGREEMENT

In consideration of the mutual covenants and agreements made in this Agreement, and other good and valuable consideration, the receipt and adequacy of which are acknowledged, the Parties agree as follows:

SECTION 1. DEFINITIONS.

1.1 Product(s).  The term "Product(s)" in this Agreement shall mean any and all products identified in **Exhibit A** to this Agreement.

1.2 Licensed Mark(s).  The term "Mark" or "Marks" in this Agreement shall mean all common law or registered trademarks set forth on **Exhibit B** to this Agreement, together with all variations, enhancements, and updates of such trademarks, and all associated goodwill.

Section 2. ASSIGNMENT; APPLICATION.

2.1 Assignment.  Licensee hereby assigns to Licensor all right, title, and interest in and to the DOUBLETAP Marks, and any and all rights associated with the DOUBLETAP Marks, including, without limitation, any and all common law trademark rights, any and all trademark actual use applications, trademark registrations, and any other rights associated with the DOUBLETAP Marks, including the goodwill embodied with the DOUBLETAP Marks, any and all stylized and typed versions of the DOUBLETAP Marks, the right to obtain trademark registrations related thereto, and the right to sue for infringements and past infringements thereof.  To the extent the Licensee does not own all right, title, and interest in and to the DOUBLETAP Marks, Licensee shall cause all other parties claiming an interest in the DOUBLETAP Marks, including, without limitation, DoubleTap Defense, , LLC, in which entity Licensee represents and warrants that it has a controlling interest, to assign all such interests Licensor.

2.2 Express Abandonment of Application.  Within five (5) business days of the Effective Date, Licensee shall expressly abandon the Application by filing with TTAB, in the Opposition proceeding, a written request for abandonment of the Application that conforms with the requirements of Section 603 of the TTAB Manual of Procedure, and 37 CFR § 2.68.

SECTION 3. GRANT OF LICENSE AND ROYALTY.

3.1 Permitted Activities.  Subject to the terms and conditions of this Agreement, Licensor hereby grants to Licensee for the term of this Agreement, a personal, limited nonexclusive, non-sublicensable, license to use the Marks for and in connection with all

activities relating to the production, distribution, packaging, marketing, and sale of the Products worldwide; provided, however, that notwithstanding the nonexclusive license to Licensee in the preceding sentence, so long as this Agreement remains in force and Licensee is full compliance with its obligations hereunder, Licensor shall not license the Marks to a third-party firearms manufacturer. Licensee may further use the Marks in keyword and other Internet search engine advertising.

3.2 <u>Restricted Activities</u>.  Licensee shall not register, purchase, or own domain names that contain the Marks or are confusingly similar thereto; provided, however, that any domain names that are assigned to Licensor pursuant to Section 2.1 above shall be licensed to Licensee pursuant to Section 3.1, above.

SECTION 4. <u>QUALITY CONTROL</u>.

4.1 <u>Maintenance of Quality</u>. Licensee shall maintain and adhere to the standards of quality described in the Standards and Specifications set forth in **Exhibit C** to this Agreement, or such other reasonable standards or specifications that may be adopted and provided to Licensee in writing by Licensor from time to time during the term of this Agreement.

4.2 <u>Rights of Inspection</u>.  To ensure that the quality of Licensee's Products is maintained, Licensor and its authorized agents and representatives shall have the right to (a) upon reasonable notice, enter Licensee's trade show booth or inspect Licensee's displays at any trade show or gathering, including the annual SHOT Show, to inspect samples of the Products and promotional materials relating to the Products, and (b) upon reasonable notice, enter Licensee's premises to inspect the Products, and the promotional materials relating to the Products, all to ensure compliance with the provisions of Section 4.1 above, during the term of this Agreement and any sell-off period.

SECTION 5. <u>CONSIDERATION</u>.

5.1 <u>Royalty</u>.  Licensee shall pay Licensor a one time monetary royalty of Twenty Five Thousand Dollars ($25,000) royalty as follows: (a) Ten Thousand Dollars ($10,000) shall be delivered to Licensor within 72 hours following shipment of any Product to a paying customer; provided that delivery of this $10,000 must occur no later than six (6) months following the Effective Date, regardless of any product sales; and (b) the remaining Fifteen Thousand Dollars ($15,000) shall paid by Licensee paying to Licensor a royalty of One Dollar ($1.00) on the sale of any firearm bearing, using, or identified by or with any of the Marks.

5.2 <u>Purchase Obligation and Statements</u>.  Licensee shall purchase and use Licensor's ammunition to test its firearms.  Due to ammunition supply issues, Licensee shall not be required to purchase Licensor's ammunition exclusively.  Upon Licensor's written request, Licensee shall prepare an annual accounting statement for the preceding twelve (12) months showing all ammunition purchases under this Section and shall mail such statements to the Licensor within twenty (20) days of Licensee's written request.  Licensee shall not have to comply with more than two (2) accounting requests per calendar year.

5.3 <u>Marketing Inserts</u>.  Upon Licensor's request, and at Licensor's sole option, Licensee shall include a marketing insert, or other marketing material supplied Licensor (at

LICENSE AGREEMENT - 3

Licensor's expense) promoting Licensor's ammunition with the packaging for Licensee's products. All inserts must be approved by Licensee at Licensee's sole discretion before use in Licensee's packaging.

      5.4 <u>Audit Rights</u>. Licensee shall preserve its records relating to (a) its purchases of Licensor's ammunition pursuant to Section 5.2, above, and (b) the marketing inserts, pursuant to Section 5.3, above, for three (3) years from the purchase or date of the record. Within this three-year period and upon reasonable prior notice, Licensor shall have the right, at Licensor's expense, to audit, or cause its designated agents to audit, Licensee's purchases and to confirm compliance with its marketing insert obligations, and Licensee shall make available to the auditor all its records relating thereto and to otherwise cooperate with the audit during normal business hours. Notwithstanding the foregoing, Licensor may not audit Licensee's records more than two (2) times in any calendar year.

      SECTION 6. <u>OWNERSHIP OF MARKS</u>.

      6.1 <u>Licensor's Ownership Rights</u>. Licensee acknowledges Licensor's exclusive right, title, and interest in and to the Marks in the firearms and ammunition industry, including, without limitation, the DOUBLETAP Marks, and the right to license the rights set forth in this Agreement; provided, however, that the Parties acknowledge the existence of third-party trademarks that potentially infringe on the Marks, and that Licensor is currently engaged in litigation to resolve such use and ownership issues. Licensee further acknowledges that its use of the Marks shall not create in Licensee any right, title, or interest in the Marks and the goodwill generated thereby shall inure to the benefit of Licensor.

      6.2 <u>Trademark Use by Licensee</u>. All use of the Marks by Licensee shall comply with the requirements of the Trademark Use Guidelines, attached to this Agreement as **Exhibit D**. In addition, if used in print materials or advertising or on the Internet, Licensee shall acknowledge therein that the Marks are Licensor's Marks.

      6.3 <u>Registration by Licensee</u>. Licensee shall not at any time apply for any registration of any copyright, trademark, service mark, or other designation, or file any document with any governmental authority anywhere, or take any other action, with respect to the Marks which might adversely affect Licensor's ownership of the Marks.

      6.4 <u>Limitation of Licensee's Ownership Rights</u>. Licensee shall not at any time challenge Licensor's right, title, or interest in the Marks or the validity of any of the Marks or any registration thereof in any country in the world. Licensee shall not represent that it has any ownership in or rights with respect to the Marks other than rights conferred by this Agreement.

      6.5 <u>Licensee's Assistance</u>. Licensee shall take all steps reasonably necessary to assist Licensor in the registration, maintenance, or enforcement of Licensor's trademark rights in the Marks, as may be reasonably requested from time to time by Licensor.

      SECTION 7. <u>INDEMNIFICATION</u>. EACH PARTY SHALL INDEMNIFY, DEFEND, PROTECT, AND HOLD HARMLESS THE OTHER PARTY AND ITS OFFICERS, DIRECTORS, OWNERS, MEMBERS AND EMPLOYEES FROM AND AGAINST ALL CLAIMS, DEMANDS, LAWSUITS, DAMAGES, LIABILITIES, JUDGMENTS, COSTS,

LICENSE AGREEMENT - 4

AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) ARISING FROM OR RELATING TO A PARTY'S BREACH OF THIS AGREEMENT; OPERATION OF ITS BUSINESS, ITS DESIGN, MANUFACTURE, SALE OR DISTRIBUTION OF ANY PRODUCT AND/OR SERVICES, THE ACT OF ANY EMPLOYEE, AGENT, OR PRINCIPAL CONNECTED WITH ITS BUSINESS, ITS OBLIGATIONS UNDER THIS AGREEMENT; ANY LIABILITY RESULTING FROM THE USE OR MISUSE OF ANY PRODUCT AND/OR SERVICES BY ANY END USER OF SUCH PRODUCT AND/OR SERVICES; OR, WITH RESPECT TO LICENSEE, LIABILITY RELATED TO TRADEMARK INFRINGEMENT CLAIMS FOR ITS USE OF THE MARKS AS CONTEMPLATED BY THIS AGREEMENT. THE INDEMNIFIED PARTY SHALL RETAIN THE RIGHT TO SELECT ITS COUNSEL IN THE EVENT THE INDEMNIFIED PARTY IS THREATENED WITH OR JOINED IN ANY ACTION ARISING FROM THE INDEMNIFYING PARTY'S ACTIONS OR INACTION.

SECTION 8. TERM AND TERMINATION.

8.1 Term. This Agreement shall commence on the Effective Date, and continue, unless sooner terminated as permitted in this Agreement, for as long as Licensee remains in business and sells Products.

8.2 Termination. Licensor may terminate this Agreement, immediately and without other cause or prior notice to Licensee, in the event that Licensee breaches its obligations under Sections 3, 4 or 5; makes an assignment, including and assignment for the benefit of creditors; makes a written admission of any inability to pay its debts or obligations as they become due; becomes or is adjudicated insolvent or bankrupt; seeks, consents to, acquiesces in, or suffers the appointment of a trustee, receiver or liquidator of Licensee, its business, or any part thereof, or a substantial part of its assets; commences or becomes subject to any proceeding in bankruptcy for an arrangement, reorganization, debt adjustment, or any other insolvency proceedings. Licensor may further terminate this Agreement immediately, without a right to cure, if Licensee brings disrepute upon Licensor, or upon the Marks, due to the gross negligence or objectively unreasonable conduct of Licensee. Licensor may further terminate this Agreement if Licensee stops selling Products for a consecutive period of one (1) year.

8.3 Cure Period. Either party may terminate this Agreement in the event of a material breach by the other party upon 30 days' written notice to the breaching party specifying the nature of such material breach unless the breaching party shall have cured such material breach within such 30 day period, or if such breach cannot be cured within such 30 day period, shall have commenced such cure and thereafter diligently continued to pursue such cure to completion.

SECTION 9. SELL OFF RIGHTS. IN THE EVENT THIS AGREEMENT TERMINATES FOR ANY REASON, EXCEPT FOR LICENSEE'S BREACH OF SECTIONS 3, 4 AND 5 OF THIS AGREEMENT, LICENSEE MAY CONTINUE TO PROMOTE, DISTRIBUTE, AND SELL PRODUCTS FROM LICENSEE'S INVENTORY. THIS SELL-OFF RIGHT SHALL TERMINATE AND BE OF NO FURTHER FORCE OR EFFECT ON THE FIRST ANNIVERSARY OF THE TERMINATION DATE. IN THE EVENT LICENSOR TERMINATES THIS AGREEMENT BECAUSE OF LICENSEE'S BREACH OF SECTIONS

3, 4 AND 5, THIS SECTION 9 SHALL NOT APPLY AND LICENSEE SHALL HAVE NO SELL–OFF RIGHTS. DURING ANY SELL OFF PERIOD LICENSEE SHALL REMAIN BOUND BY THE TERMS OF SECTIONS 4, 5, 6 AND 7 OF THIS AGREEMENT.

### SECTION 10. THIRD PARTY INFRINGEMENTS

10.1 Notice and Enforcement. Licensee shall promptly notify Licensor of any and all infringements, imitations, simulations or other illegal use or misuse of the Marks which come to Licensee's attention. As the sole owner of the Marks, Licensor shall determine whether to take any action to prevent the infringement, imitation, simulation or other illegal use or misuse of the Marks. If Licensor elects not to take such action, Licensee may take such action at Licensee's expense if it has received Licensor's prior written approval to take such action. In such event, (a) Licensor shall, at Licensee's expense, cooperate in such action with Licensee including, without limitation, joining as a party, and (b) Licensee shall keep Licensor informed of all material developments in any such action, and shall not enter into any settlement or other agreement involving the Marks without the approval and participation of Licensor. Any money recovered by way of damages or otherwise with respect to such action shall be kept by the party which bore the costs of such action; or, in any case where the parties have shared the costs, such money shall be shared in proportion to the costs borne by each party.

10.2 Assistance. Licensee shall render Licensor all reasonable assistance in connection with any matter pertaining to the protection, enforcement or infringement of Marks used by Licensee, whether in the courts, administrative or quasi-judicial agencies, or otherwise.

### Section 11. MISCELLANEOUS.

11.1 Assignments. Licensee shall not assign this Agreement or assign any rights to the Marks in any manner, without the prior written consent of Licensor, which will not be unreasonably withheld. All terms and provisions of this Agreement will be binding upon, inure to the benefit of, and be enforceable by Licensee and Licensor and their respective successors and permitted assigns. Licensor acknowledges that the first sale doctrine shall apply to resale transactions of genuine trademarked products, and no sublicense shall be required for such transactions.



11.2 Severability. If any term or provision of this Agreement shall, to any extent, be determined to be invalid or unenforceable by a court or body of competent jurisdiction, the remainder of this Agreement shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

11.3 Entire Agreement; Amendments. This Agreement contains the entire understanding of the parties. There are no representations, warranties, covenants, agreements, or undertakings other than those expressly set forth in this Agreement. This Agreement may not be modified or amended except in a writing signed by both parties.

11.4 Attorneys' Fees. If a party shall commence any action or proceeding against the other party in order to enforce the provisions of this Agreement or to recover damages as a result of the alleged breach of any of the provisions of this Agreement, the substantially

LICENSE AGREEMENT - 6

prevailing party shall be entitled to recover all reasonable costs in connection therewith, including reasonable attorneys' fees.

      11.5 <u>Notices</u>. All communications which are required or permitted to be given to the parties under this Agreement shall be sufficient in all respects if given in writing and delivered in person, by facsimile, by overnight courier, or by registered or certified mail, postage prepaid, return receipt requested, to the receiving party at the following address:

| Licensor: | Hornady Manufacturing Co. | Copy to: | Brett Foster |
| | _____ | | Holland & Hart LLP |
| | _____ | | 222 S. Main, Suite 2200 |
| | Attn: _____ | | Salt Lake City, UT 84101 |
| | Fax No. _____ | | |
| | | | |
| Licensee: | DoubleTap Defense, LLC | Copy to: | Robert J. Kaufman |
| | _____ | | Kaufman, Miller & Forman PC |
| | _____ | | 8215 Roswell Road |
| | Attn: _____ | | Building 800 |
| | Fax No. _____ | | Atlanta, GA 30350-6445 |
| | | | Fax No. 770-395-6720 |

or to such other address as such party may have given to the other by notice pursuant to this Section. Notice shall be deemed given on the date of delivery, in the case of personal delivery or telecopy, or on the delivery or refusal date, as specified on the return receipt, in the case of overnight courier or registered or certified mail.

      11.6 <u>Confidentiality</u>. The terms of this Agreement are confidential. Licensor and Licensee agree that if Licensee discloses the terms of this Agreement to a third party, except under compulsion by law such as a subpoena, such action shall be grounds for immediate termination of this Agreement the right of Licensee to use the Licensed Marks. Licensor may disclose this in any pending litigation provided that the Agreement is designated "confidential" under a Protective Order entered by the Court. Licensee may disclose this Agreement if compelled by law such as a subpoena, but shall take reasonable steps to preserve the confidentiality of this Agreement.

      11.7 <u>Applicable Law</u>. This Agreement shall be governed by and construed according to the internal laws of the state of Nebraska without regard to the conflicts of laws principles thereof. By execution of this Agreement, each party submits to in personam jurisdiction in the state of Nebraska.

      11.8 <u>Status of Parties</u>. Nothing contained in this Agreement shall be deemed or construed as creating a joint venture or partnership between the parties to this Agreement. Neither party shall have the power to control the activities and operations of the other and their status is, and at all times shall continue to be, that of independent contractors with respect to each other. Neither party shall hold itself out as having any authority or relationship in contravention of this paragraph, and neither party shall act on behalf of the other or enter into any contracts, warranty, or representation as to any other matter on the behalf of the other.

LICENSE AGREEMENT - 7

The parties have executed this Agreement as of the Effective Date.

**LICENSOR:**

Hornady Manufacturing Company

By:_____

Title:_____

**LICENSEE:**

Central Holding Corporation

By:_____

Title:_____

DoubleTap Defense, LLC, f/k/a Heizer
Technologies, LLC

By:_____

Title:_____

LICENSE AGREEMENT - 8

**Exhibit A**
**to**
**License Agreement**

PRODUCT LIST:  Firearms, namely pistols; clothing related to the firearms industry; and marketing materials relating to the foregoing.  The product list shall further include firearm holsters, fitted firearm cases, weapons cases, soft and hard firearm cases, firearm stripper clips, 6 round firearm clips, 2 round firearm speed loader strips, firearm cleaning kits, firearm barrel assembly kits, but shall in no event shall the product list include ammunition.

Initial

*RSK-CHC*
*RSK-DDLLC*
_____

**Exhibit B**
**to**
**License Agreement**

**<u>Trademarks</u>**

1.      DOUBLETAP, including word, stylized and word and design variations thereof.

Initial

*RBK-CHL*
*RBK-DDLLC*

**Exhibit C**
**to**
**License Agreement**

**<u>Standards and Specifications</u>**

All Product produced and distributed by Licensee shall be of a quality comparable to the high quality Licensee has maintained in its past business of manufacturing and selling the type of goods covered by this Agreement.

Initial

*R3K-CHC*

*R8K-DDLLC*

**Exhibit D**
**to**
**License Agreement**

**<u>Trademark Use Guidelines</u>**

In order to preserve the integrity of the Marks, the following guidelines must be closely followed:

1. The Marks should be used directly on the goods being sold under the Marks, or on the container or packaging in which the goods are sold.  Use on advertising alone is insufficient.

2. All advertising, displays, and promotional materials utilizing the Marks shall carry a notice that the Marks are the property of Licensor, and that the Marks are used under a license granted by the Licensor.  Licensee shall use its best efforts to comply with this provision.

3. Licensee shall attempt to make reasonable efforts not to use The Marks  as a noun in verbal or written promotions or other communications regarding the Marks.  Instead, Licensee should attempt to use the Mark as an adjective followed by a noun.  By way of example, Licensee's reference to "DoubleTap™ pistols" on its website conforms with this guideline, as would another firearm noun following a Mark.

4. When using the Marks on packaging, promotional materials, advertisements, point of purchase displays, or other labels, the Marks should employ a font larger than any other font on the packaging, advertisement or display.

5. When using the Marks in text, use all capitals, different fonts or colors to distinguish the Mark from other text.

6. Always use the "™" or "®" superscript in close proximity to any use of the Marks, whether on labels, advertising, packaging or textual copy.

7. The Marks should never be used as a verb.

5324892_12

Initial
*RBK~CHC*
*RBK~DPLLL*

# EXHIBIT 2

**Matthew D. Treco**

| | |
|---|---|
| **From:** | Brett Foster [BFoster@hollandhart.com] |
| **Sent:** | Wednesday, March 06, 2013 6:41 PM |
| **To:** | Robert Kaufman |
| **Cc:** | Brian T. McKernan (bmckernan@mcgrathnorth.com) |
| **Subject:** | RE: DoubleTap Defense - Hornady license |
| **Attachments:** | 2013-03-06 Settlement Agreement with Central Holding and Heizer Technolo....pdf |

Thanks, Rob.

Attached is the fully executed agreement.  Per the agreement, please make sure that Heizer Technologies files the express abandonment of the trademark Application with the Patent and Trademark Ofifce. See Section 2.2.

Also, Brian, could you prepare a stipulation of dismissal and proposed order of dismissal of the remaining defendants for our review?

Best regards,
Brett

**From:** Robert Kaufman [mailto:rjk@kauflaw.net]
**Sent:** Wednesday, March 06, 2013 7:30 AM
**To:** Brett Foster
**Cc:** Brian T. McKernan (bmckernan@mcgrathnorth.com); Dufner, Marvin; Raymond Kohout
**Subject:** DoubleTap Defense - Hornady license

Brett,
Attached is my clients' executed copy of the license Agreement.
Please forward an executed copy from Hornady as these counterparts will establish a fully executed license.
I am Fedexing six signed "originals".
Kindly have your client sign them and return three for our records.
Lastly, please proceed with the dismissal of the suit.
Let me know if there is anything left to do.
Best regards,
Rob


Robert J. Kaufman
Kaufman, Miller & Forman, P.C.
8215 Roswell Road, Building 800
Atlanta, Georgia 30350
Tel: (770)390-9200
Fax:(770)395-6720
RJK@Kauflaw.net
www.kauflaw.net

# EXHIBIT 3



**HOLLAND&HART.**

Brett L. Foster
Partner
Phone 801.799.5836
bfoster@hollandhart.com

7 March 2013

## VIA CERTIFIED MAIL AND EMAIL
## RETURN RECEIPT REQUESTED

DomainsByProxy.com
14747 N Northsight Blvd Suite 111, PMB 309
Scottsdale, AZ 85260

Chad Engen
1421 Urbana Ln
Lincoln, NE 68505
chad.k.engen@us.army.mil

   Re: *Infringement of Double Tap Trademark*
     *Cease and Desist Demand*

Dear Sir:

We represent Hornady Manufacturing Company, Inc. ("Hornady") in connection with its intellectual property matters, including trademark matters. Hornady owns the TAP® trademark under which it markets and sells a diverse line of firearm ammunition products. The TAP® mark is a federally registered and incontestable trademark. I have enclosed U.S. Registration No. 2,259,161 for the TAP® mark for your review. Hornady uses the TAP® mark in conjunction with various other terms to sell its line of TAP® ammunition, including TAP CQ, TAP PRECISION, TAP BARRIER, TAP URBAN, and BTHP TAP.[1]

Hornady has vigorously enforced its trademark rights. As just one of a number of examples, Hornady learned that its trademark rights were being infringed by several companies involved in selling a pistol under the DOUBLETAP trademark. Hornady filed a lawsuit in the United States District Court for the District of Nebraska, asserting trademark infringement against the companies responsible for the infringing use of the DOUBLETAP mark. *See Hornady Manufacturing Company v. Heizer Firearms, LLC, et al.*, Civil No. 4:12-cv-03117. After a substantial period of litigation, one of the defendants agreed to stop using the infringing DOUBLETAP mark. The other defendants settled the case, acknowledging that their use of the DOUBLETAP mark, as alleged in the lawsuit, is likely to cause confusion with Hornady's TAP® marks. As a part of that settlement, Hornady entered into a license agreement that authorizes its

---

[1] Many of these sub-brands are independently registered trademarks. *See* enclosed registration certificates: U.S. Reg. No. 2,529,278 (TAP CQ), U.S. Reg. No. 2,433,695 (TAP PRECISION), U.S. Reg. No. 2,433,696 (TAP URBAN).

**Holland&Hart** LLP

Phone [801] 799-5800 Fax [801] 799-5700 www.hollandhart.com

222 South Main Street Suite 2200 Salt Lake City, UT 84101

Aspen Boulder Carson City Colorado Springs Denver Denver Tech Center Billings Boise Cheyenne Jackson Hole Las Vegas Reno Salt Lake City Santa Fe Washington, D.C.

6074469_1

**HOLLAND & HART** 

7 March 2013
Page 2

licensees to use the DOUBLETAP mark in connection with firearms and firearms-related accessories. Importantly, one of the licensees is DoubleTap Defense, LLC. They are Hornady's exclusive licensee with respect to using the DOUBLETAP mark to make and sell firearms and firearms-related accessories.

We recently learned that DoubleTapDefense.com is using the DOUBLETAP mark to sell firearms-related services, specifically concealed carry classes, through its website, DoubleTapDefense.com. DoubleTapDefense.com's action of offering and selling these services using the DOUBLETAP mark constitutes trademark infringement under the United States Trademark Act (15 U.S.C. § 1114).

Hornady cannot tolerate infringement of its valuable intellectual property rights and must protect the rights of its exclusive licensee. Accordingly, Hornady demands that DoubleTapDefense.com immediately (1) cease using the DOUBLETAP mark on its website in connection with the sale of firearms-related services; (2) disable and surrender the DoubleTapDefense.com domain name; and (3) remove the DOUBLETAP mark from any and all other websites, marketing materials, and/or other venues through which DoubleTapDefense.com or any affiliated entity may be offering any firearms-related products or services for sale.

Hornady would prefer to resolve this issue amicably and without costly litigation. To that end, Hornady demands that DoubleTapDefense.com provide a written response **within twenty (20) days of the date of this letter** providing the following:

(a) confirmation that you have ceased using DOUBLETAP in connection with sales of firearms or firearms-related products or services, including that you have removed DOUBLETAP from all websites, marketing materials, and/or other venues through which you or any affiliated entity may be offering any firearms-related products or services for sale;

(b) confirmation that the DoubleTapDefense.com domain name has been disabled and surrendered; and

(c) express agreement that you will not use the DOUBLETAP mark in the future to offer or sell firearms-related products or services unless authorized to do so by Hornady.

We look forward to your prompt and cooperative response.

Very sincerely,

Brett L. Foster
of Holland & Hart LLP

BLF/th
cc: Hornady Manufacturing Co.

6074469_1

Int. Cl.: 13

Prior U.S. Cls.: 2 and 9

Reg. No. 2,259,161

## United States Patent and Trademark Office

Registered July 6, 1999

### TRADEMARK
### PRINCIPAL REGISTER

### TAP

HORNADY MANUFACTURING COMPANY (NEBRASKA CORPORATION)
P.O. BOX 1848
GRAND ISLAND, NE 68802

FOR: AMMUNITION, NAMELY, BULLETS AND CARTRIDGES, IN CLASS 13 (U.S. CLS. 2 AND 9).

FIRST USE 7-15-1997; IN COMMERCE 7-18-1997.

SER. NO. 75-451,082, FILED 3-16-1998.

THEODORE MCBRIDE, EXAMINING ATTORNEY

HORNADY 002103

Int. Cl.: 13

Prior U.S. Cls.: 2 and 9

Reg. No. 2,529,278

**United States Patent and Trademark Office**    Registered Jan. 15, 2002

TRADEMARK
PRINCIPAL REGISTER

## TAP CQ

HORNADY MANUFACTURING COMPANY (NE-
BRASKA CORPORATION)
P.O. BOX 1848
GRAND ISLAND, NE 68802

FOR: AMMUNITION NAMELY BULLETS AND
CARTRIDGES, IN CLASS 13 (U.S. CLS. 2 AND 9).

FIRST USE 7-15-1997; IN COMMERCE 7-18-1997.

OWNER OF U.S. REG. NO. 2,259,161.

SER. NO. 76-043,179, FILED 5-8-2000.

THEODORE MCBRIDE, EXAMINING ATTORNEY

**HORNADY 002151**

Int. Cl.: 13

Prior U.S. Cls.: 2 and 9

Reg. No. 2,433,695

**United States Patent and Trademark Office**  Registered Mar. 6, 2001

## TRADEMARK
## PRINCIPAL REGISTER

## TAP PRECISION

HORNADY MANUFACTURING COMPANY (NE-BRASKA CORPORATION)
P.O. BOX 1848
GRAND ISLAND, NE 68802

FOR: AMMUNITION NAMELY BULLETS AND CARTRIDGES, IN CLASS 13 (U.S. CLS. 2 AND 9).

FIRST USE 7-15-1997; IN COMMERCE 7-18-1997.

OWNER OF U.S. REG. NO. 2,259,161.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "PRECISION", APART FROM THE MARK AS SHOWN.

SER. NO. 76-042,885, FILED 5-8-2000.

BRADLEY BAYAT, EXAMINING ATTORNEY

**HORNADY 002210**

Int. Cl.: 13

Prior U.S. Cls.: 2 and 9

## United States Patent and Trademark Office

Reg. No. 2,433,696
Registered Mar. 6, 2001

### TRADEMARK
### PRINCIPAL REGISTER

## TAP URBAN

HORNADY MANUFACTURING COMPANY (NE-
BRASKA CORPORATION)
P.O. BOX 1848
GRAND ISLAND, NE 68802

FOR: AMMUNITION NAMELY BULLETS AND
CARTRIDGES, IN CLASS 13 (U.S. CLS. 2 AND 9).

FIRST USE 7-15-1997; IN COMMERCE 7-18-1997.

OWNER OF U.S. REG. NO. 2,259,161.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "URBAN", APART FROM THE
MARK AS SHOWN.

SER. NO. 76-042,886, FILED 5-8-2000.

BRADLEY BAYAT, EXAMINING ATTORNEY

**HORNADY 002266**

# EXHIBIT 4



**HOLLAND&HART** LLP

Brett L. Foster
Partner
Phone 801.799.5836
bfoster@hollandhart.com

7 March 2013

## VIA CERTIFIED MAIL AND EMAIL
## RETURN RECEIPT REQUESTED

Perfect Privacy LLC
303 Peachtree Center Ave
Atlanta, GA 30303

Doubletapguns.com@perfectprivacy.com

Re:     *Infringement of Double Tap Trademark*
        *Cease and Desist Demand*

Dear Sir:

We represent Hornady Manufacturing Company, Inc. ("Hornady") in connection with its intellectual property matters, including trademark matters. Hornady owns the TAP® trademark under which it markets and sells a diverse line of firearm ammunition products. The TAP® mark is a federally registered and incontestable trademark. I have enclosed U.S. Registration No. 2,259,161 for the TAP® mark for your review. Hornady uses the TAP® mark in conjunction with various other terms to sell its line of TAP® ammunition, including TAP CQ, TAP PRECISION, TAP BARRIER, TAP URBAN, and BTHP TAP.[1]

Hornady has vigorously enforced its trademark rights. As just one of a number of examples, Hornady learned that its trademark rights were being infringed by several companies involved in selling a pistol under the DOUBLETAP trademark. Hornady filed a lawsuit in the United States District Court for the District of Nebraska, asserting trademark infringement against the companies responsible for the infringing use of the DOUBLETAP mark. *See Hornady Manufacturing Company v. Heizer Firearms, LLC, et al.*, Civil No. 4:12-cv-03117. After a substantial period of litigation, one of the defendants agreed to stop using the infringing DOUBLETAP mark. The other defendants settled the case, acknowledging that their use of the DOUBLETAP mark, as alleged in the lawsuit, is likely to cause confusion with Hornady's TAP® marks. As a part of that settlement, Hornady entered into a license agreement that authorizes its licensees to use the DOUBLETAP mark in connection with firearms and firearms-related accessories. Importantly, one of the licensees is DoubleTap Defense, LLC. They are Hornady's

---

[1] Many of these sub-brands are independently registered trademarks. *See* enclosed registration certificates: U.S. Reg. No. 2,529,278 (TAP CQ), U.S. Reg. No. 2,433,695 (TAP PRECISION), U.S. Reg. No. 2,433,696 (TAP URBAN).

Holland & Hart LLP
Phone [801] 799-5800 Fax [801] 799-5700 www.hollandhart.com
222 South Main Street Suite 2200 Salt Lake City, UT 84101

Aspen Boulder Carson City Colorado Springs Denver Denver Tech Center Billings Boise Cheyenne Jackson Hole Las Vegas Reno Salt Lake City Santa Fe Washington, D.C.

6073782_1

**HOLLAND&HART** 

7 March 2013
Page 2

exclusive licensee with respect to using the DOUBLETAP mark to make and sell firearms and firearms-related accessories.

We recently learned that DoubleTapGuns.com is using the DOUBLETAP mark to sell silencers for a variety of firearms through its website, DoubleTapGuns.com. DoubleTapGuns.com's action of offering and selling these products using the DOUBLETAP mark constitutes trademark infringement under the United States Trademark Act (15 U.S.C. § 1114).

Hornady cannot tolerate infringement of its valuable intellectual property rights. Accordingly, it demands that DoubleTapGuns.com immediately (1) cease using the DOUBLETAP mark on its website in connection with the sale of firearms-related products; (2) disable and surrender the DoubleTapGuns.com domain name; and (3) remove the DOUBLETAP mark from any and all other websites, marketing materials, and/or other venues through which DoubleTapGuns.com or any affiliated entity may be offering any firearms-related products or services for sale.

Hornady would prefer to resolve this issue amicably and without costly litigation. To that end, Hornady demands that DoubleTapGuns.com provide a written response **within twenty (20) days of the date of this letter** providing the following:

(a) confirmation that you have ceased using DOUBLETAP in connection with sales of firearms or firearms-related products or services, including that you have removed DOUBLETAP from all websites, marketing materials, and/or other venues through which you or any affiliated entity may be offering any firearms-related products or services for sale;

(b) confirmation that the DoubleTapGuns.com domain name has been disabled and surrendered; and

(c) express agreement that you will not use the DOUBLETAP mark in the future to offer or sell firearms-related products or services unless authorized to do so by Hornady.

We look forward to your prompt and cooperative response.

Very sincerely,

Brett L. Foster
of Holland & Hart ᴸᴸᴾ

BLF/th
cc:  Hornady Manufacturing Co.

6073782_1

Int. Cl.: 13

Prior U.S. Cls.: 2 and 9

**United States Patent and Trademark Office**

Reg. No. 2,259,161

Registered July 6, 1999

## TRADEMARK
PRINCIPAL REGISTER

## TAP

HORNADY MANUFACTURING COMPANY
(NEBRASKA CORPORATION)
P.O. BOX 1848
GRAND ISLAND, NE 68802

FOR: AMMUNITION, NAMELY, BULLETS
AND CARTRIDGES, IN CLASS 13 (U.S. CLS. 2
AND 9).

FIRST USE 7-15-1997; IN COMMERCE
7-18-1997.

SER. NO. 75-451,082, FILED 3-16-1998.

THEODORE MCBRIDE, EXAMINING ATTOR-
NEY

**HORNADY 002103**

Int. Cl.: 13

Prior U.S. Cls.: 2 and 9

**United States Patent and Trademark Office**

Reg. No. 2,529,278
Registered Jan. 15, 2002

## TRADEMARK
## PRINCIPAL REGISTER

## TAP CQ

HORNADY MANUFACTURING COMPANY (NE-
BRASKA CORPORATION)
P.O. BOX 1848
GRAND ISLAND, NE 68802

FOR: AMMUNITION NAMELY BULLETS AND
CARTRIDGES, IN CLASS 13 (U.S. CLS. 2 AND 9).

FIRST USE 7-15-1997; IN COMMERCE 7-18-1997.

OWNER OF U.S. REG. NO. 2,259,161.

SER. NO. 76-043,179, FILED 5-8-2000.

THEODORE MCBRIDE, EXAMINING ATTORNEY

**HORNADY 002151**

Int. Cl.: 13

Prior U.S. Cls.: 2 and 9

**United States Patent and Trademark Office**

Reg. No. 2,433,695
Registered Mar. 6, 2001

## TRADEMARK
## PRINCIPAL REGISTER

## TAP PRECISION

HORNADY MANUFACTURING COMPANY (NE-
BRASKA CORPORATION)
P.O. BOX 1848
GRAND ISLAND, NB 68802

FOR: AMMUNITION NAMELY BULLETS AND
CARTRIDGES, IN CLASS 13 (U.S. CLS. 2 AND 9).

FIRST USE 7-15-1997; IN COMMERCE 7-18-1997.

OWNER OF U.S. REG. NO. 2,259,161.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "PRECISION", APART FROM THE
MARK AS SHOWN.

SER. NO. 76-042,885, FILED 5-8-2000.

BRADLEY BAYAT, EXAMINING ATTORNEY

**HORNADY 002210**

Int. Cl.: 13

Prior U.S. Cls.: 2 and 9

United States Patent and Trademark Office

Reg. No. 2,433,696
Registered Mar. 6, 2001

## TRADEMARK
## PRINCIPAL REGISTER

### TAP URBAN

HORNADY MANUFACTURING COMPANY (NE-
BRASKA CORPORATION)
P.O. BOX 1848
GRAND ISLAND, NE 68802

FOR: AMMUNITION NAMELY BULLETS AND
CARTRIDGES, IN CLASS 13 (U.S. CLS. 2 AND 9).

FIRST USE 7-15-1997; IN COMMERCE 7-18-1997.

OWNER OF U.S. REG. NO. 2,259,161.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "URBAN", APART FROM THE
MARK AS SHOWN.

SER. NO. 76-042,886, FILED 5-8-2000.

BRADLEY BAYAT, EXAMINING ATTORNEY

**HORNADY 002266**

# **EXHIBIT 5**



Brett L. Foster
Partner
Phone 801.799.5836
bfoster@hollandhart.com

7 March 2013

## VIA CERTIFIED MAIL AND EMAIL
## RETURN RECEIPT REQUESTED

Trevor Harwood
910 Corunna Ave.
Owosso, MI 48867

DoubleTapHolsters@Gmail.com
Drscroogemcduck@Gmail.com

> Re: *Infringement of Double Tap Trademark*
> *Cease and Desist Demand*

Dear Sir:

We represent Hornady Manufacturing Company, Inc. ("Hornady") in connection with its intellectual property matters, including trademark matters. Hornady owns the TAP® trademark under which it markets and sells a diverse line of firearm ammunition products. The TAP® mark is a federally registered and incontestable trademark. I have enclosed U.S. Registration No. 2,259,161 for the TAP® mark for your review. Hornady uses the TAP® mark in conjunction with various other terms to sell its line of TAP® ammunition, including TAP CQ, TAP PRECISION, TAP BARRIER, TAP URBAN, and BTHP TAP.[1]

Hornady has vigorously enforced its trademark rights. As just one of a number of examples, Hornady learned that its trademark rights were being infringed by several companies involved in selling a pistol under the DOUBLETAP trademark. Hornady filed a lawsuit in the United States District Court for the District of Nebraska, asserting trademark infringement against the companies responsible for the infringing use of the DOUBLETAP mark. *See Hornady Manufacturing Company v. Heizer Firearms, LLC, et al.*, Civil No. 4:12-cv-03117. After a substantial period of litigation, one of the defendants agreed to stop using the infringing DOUBLETAP mark. The other defendants settled the case, acknowledging that their use of the DOUBLETAP mark, as alleged in the lawsuit, is likely to cause confusion with Hornady's TAP® marks. As a part of that settlement, Hornady entered into a license agreement that authorizes its licensees to use the DOUBLETAP mark in connection with firearms and firearms-related accessories. Importantly, one of the licensees is DoubleTap Defense, LLC. They are Hornady's

---

[1] Many of these sub-brands are independently registered trademarks. *See* enclosed registration certificates: U.S. Reg. No. 2,529,278 (TAP CQ), U.S. Reg. No. 2,433,696 (TAP URBAN), U.S. Reg. No. 2,433,695 (TAP PRECISION).

6074898_1



7 March 2013
Page 2

exclusive licensee with respect to using the DOUBLETAP mark to make and sell firearms and firearms-related accessories.

We recently learned that Double Tap Holsters is using the DOUBLETAP mark to sell custom holsters and accessories for firearms through its website, DoubleTapFirearms.com. Double Tap Holsters' action of offering and selling these products using the DOUBLETAP mark constitutes trademark infringement under the United States Trademark Act (15 U.S.C. § 1114).

Hornady cannot tolerate infringement of its valuable intellectual property rights. Accordingly, it demands that Double Tap Holsters immediately (1) cease using the DOUBLETAP mark on its website in connection with the sale of firearms-related products; (2) disable and surrender the DoubleTapFirearms.com domain name; and (3) remove the DOUBLETAP mark from any and all other websites, marketing materials, and/or other venues through which DoubleTapFirearms.com or any affiliated entity may be offering any firearms-related products or services for sale.

Hornady would prefer to resolve this issue amicably and without costly litigation. To that end, Hornady demands that Double Tap Holsters provide a written response **within twenty (20) days of the date of this letter** providing the following:

(a) confirmation that you have ceased using DOUBLETAP in connection with sales of firearms or firearms-related products or services, including that you have removed DOUBLETAP from all websites, marketing materials, and/or other venues through which you or any affiliated entity may be offering any firearms-related products or services for sale;

(b) confirmation that the DoubleTapFirearms.com domain name has been disabled and surrendered; and

(c) express agreement that you will not use the DOUBLETAP mark in the future to offer or sell firearms-related products or services unless authorized to do so by Hornady.

We look forward to your prompt and cooperative response.

Very sincerely,

Brett L. Foster
of Holland & Hart LLP

BLF/th
cc:   Hornady Manufacturing Co.

6074898_1

Int. Cl.: 13

Prior U.S. Cls.: 2 and 9

**United States Patent and Trademark Office**

Reg. No. 2,259,161

Registered July 6, 1999

## TRADEMARK
PRINCIPAL REGISTER

## TAP

HORNADY MANUFACTURING COMPANY
   (NEBRASKA CORPORATION)
P.O. BOX 1848
GRAND ISLAND, NE 68802

   FOR: AMMUNITION, NAMELY, BULLETS
AND CARTRIDGES, IN CLASS 13 (U.S. CLS. 2
AND 9).

FIRST USE 7-15-1997; IN COMMERCE
7-18-1997.

   SER. NO. 75-451,082, FILED 3-16-1998.

THEODORE MCBRIDE, EXAMINING ATTOR-
   NEY

**HORNADY 002103**

Int. Cl.: 13

Prior U.S. Cls.: 2 and 9

Reg. No. 2,529,278

United States Patent and Trademark Office    Registered Jan. 15, 2002

## TRADEMARK
## PRINCIPAL REGISTER

## TAP CQ

HORNADY MANUFACTURING COMPANY (NE-
  BRASKA CORPORATION)
P.O. BOX 1848
GRAND ISLAND, NE 68802

FOR: AMMUNITION NAMELY BULLETS AND
CARTRIDGES, IN CLASS 13 (U.S. CLS. 2 AND 9).

FIRST USE 7-15-1997; IN COMMERCE 7-18-1997.

OWNER OF U.S. REG. NO. 2,259,161.

SER. NO. 76-043,179, FILED 5-8-2000.

THEODORE MCBRIDE, EXAMINING ATTORNEY

HORNADY 002151

Int. Cl.: 13

Prior U.S. Cls.: 2 and 9

## United States Patent and Trademark Office

Reg. No. 2,433,695
Registered Mar. 6, 2001

## TRADEMARK
## PRINCIPAL REGISTER

## TAP PRECISION

HORNADY MANUFACTURING COMPANY (NE-
BRASKA CORPORATION)
P.O. BOX 1848
GRAND ISLAND, NE 68802

FOR: AMMUNITION NAMELY BULLETS AND
CARTRIDGES, IN CLASS 13 (U.S. CLS. 2 AND 9).

FIRST USE 7-15-1997; IN COMMERCE 7-18-1997.

OWNER OF U.S. REG. NO. 2,259,161.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "PRECISION", APART FROM THE
MARK AS SHOWN.

SER. NO. 76-042,885, FILED 5-8-2000.

BRADLEY BAYAT, EXAMINING ATTORNEY

**HORNADY 002210**

Int. Cl.: 13

Prior U.S. Cls.: 2 and 9

**United States Patent and Trademark Office**

Reg. No. 2,433,696
Registered Mar. 6, 2001

## TRADEMARK
### PRINCIPAL REGISTER

## TAP URBAN

HORNADY MANUFACTURING COMPANY (NE-
BRASKA CORPORATION)
P.O. BOX 1848
GRAND ISLAND, NE 68802

FOR: AMMUNITION NAMELY BULLETS AND
CARTRIDGES, IN CLASS 13 (U.S. CLS. 2 AND 9).

FIRST USE 7-15-1997; IN COMMERCE 7-18-1997.

OWNER OF U.S. REG. NO. 2,259,161.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "URBAN", APART FROM THE
MARK AS SHOWN.

SER. NO. 76-042,886, FILED 5-8-2000.

BRADLEY BAYAT, EXAMINING ATTORNEY

**HORNADY 002266**

# EXHIBIT 6

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| | |
|---|---|
| ESTTA Tracking number: | **ESTTA528912** |
| Filing date: | **03/26/2013** |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding | 91201430 |
| Party | Defendant<br>Central Holding Corporation |
| Correspondence<br>Address | ROBERT J KAUFMAN<br>KAUFMAN MILLER & FORMAN PC<br>8215 ROSWELL ROAD, BUILDING 800<br>ATLANTA, GA 30350<br>UNITED STATES<br>rjk@kauflaw.net, dlp@kauflaw.net |
| Submission | Withdrawal Of Application |
| Filer's Name | Robert J. Kaufman |
| Filer's e-mail | rjk@kauflaw.net, abk@kauflaw.net, iim@kauflaw.net |
| Signature | /Robert J. Kaufman/ |
| Date | 03/26/2013 |
| Attachments | Express Withdrawal of Application - DOUBLETAP.pdf ( 2 pages )(12155 bytes ) |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

|  |  |
|---|---|
| Hornady Manufacturing Company, | ) |
|  | ) |
|        Opposer, | )   Opposition No. 91201430 |
|  | )   Serial No. 85,204,480 |
|    v. | )   Mark: DOUBLETAP |
|  | ) |
| Central Holding Corporation, | ) |
|  | ) |
|        Applicant. | ) |
|  | ) |

**NOTICE OF EXPRESS ABANDONMENT**

Pursuant to 37 CFR §§ 2.68, Applicant, Heizer Technologies, LLC, as assignee from Central Holding Corporation, through its counsel, hereby expressly abandons Application Serial No. 85,204,480.

Respectfully submitted this 26th day of March, 2013.


          /Robert J. Kaufman/
          Robert J. Kaufman
          David L. Pardue
          KAUFMAN MILLER & FORMAN PC
          8215 Roswell Road, Building 800
          Atlanta, GA 30350

          **ATTORNEYS FOR APPLICANT**
          **HEIZER TECHNOLOGIES, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing **Notice of Express Abandonment** was served on the 26th day of March, 2013, by first class mail, postage prepaid, on the following:

> Brett L. Foster
> Richard T. Jacson
> 222 S. Main, Suite 2200
> Salt Lake City, UT  84101

_____/Robert J. Kaufman/_____

# EXHIBIT 7

# KIRTON | McCONKIE

R. Gary Winger
gwinger@kmclaw.com
801.323.5908

June 9, 2014

**VIA FEDERAL EXPRESS**

Robert J. Kaufman
DoubleTap Defense, LLC
8215 Roswell Road, Bldg. 800
Atlanta, GA 30350

    **Re:**  **DoubleTap, Inc. Trademark Infringement**

Dear Mr. Kaufman:

  We represent DoubleTap, Inc., a Utah corporation ("DoubleTap"). DoubleTap has become aware of the existence of DoubleTap Defense and that DoubleTap Defense is utilizing the mark "DOUBLETAP" in reference to the sale of products similar to DoubleTap. It is DoubleTap's understanding that DoubleTap Defense is representing that it is using the business name DOUBLETAP under license from Hornady Manufacturing Company, Inc. ("Hornady"). You may or may not be aware that DoubleTap recently prevailed in a lawsuit filed by Hornady, which affirmed DoubleTap's rights to the name DoubleTap vis a vis Hornday. A copy of the Decision and the Appeal in that matter are enclosed. In other words, we do not belive that Hornady has the right to license DoubleTap's name and trademark.

  DoubleTap has been using the name and trademark, DOUBLETAP, in interstate commerce since at least 2002. DoubleTap has spent significant time, money and effort creating goodwill and publicity for DoubleTap as "DOUBLETAP". As a result, the trade name DOUBLETAP is now a valuable identifier used by consumers throughout the United States and Canada market to identify products manufactured by DoubleTap. "DOUBLETAP" has become associated in the minds of consumers with DoubleTap.

  Your utilization of the word "DOUBLETAP" to promote DoubleTap Defense's products is causing consumer confusion. Such use is a violation of federal and common law trademark law and constitutes trademark infringement and unfair competition. It is inappropriate to trade on the name of another's successful mark and business without authorization.

  Accordingly, we hereby demand that you immediately cease all use of the word "DOUBLETAP" and/or association of the mark "DOUBLETAP" in connection with promotional and advertising materials, including websites, for firearms and ammunition. Failure to comply with this demand will result in DoubleTap filing claims for infringement of trademark

---

ATTORNEYS AT LAW
www.kmclaw.com

Kirton McConkie Building, 50 East South Temple, Salt Lake City, UT 84111
1800 World Trade Center, 60 East South Temple, Salt Lake City, UT 84111
Thanksgiving Park Four, 2600 W. Executive Parkway, Ste. 400, Lehi, UT 84043

801.328.3600 *tel*   801.321.4893 *fax*
801.328.3600 *tel*   801.321.4893 *fax*
801.426.2100 *tel*   801.426.2101 *fax*

Kaufman, Robert J.
DoubleTap Defense, LLC
June 9, 2014
Page 2

and copyright rights and unfair competition in the Federal District Court for the District of Utah. DoubleTap will seek to enjoin your use of the word "DOUBLETAP" and/or association of the mark "DOUBLETAP" in connection with advertising ammunition and firearms in the United States. If you do not immediately cease the use of the "DOUBLETAP" mark in connection with ammunition and firearms, we further intend to seek full compensation for all injuries and money damages your infringement of DoubleTap's trademark causes DoubleTap. Be aware that since your use of DoubleTap's trademark is willful, a court may award DoubleTap treble damages together with DoubleTap's reasonable attorneys' fees.

We would appreciate your prompt response to the above confirming that such conduct will not continue. Please contact me at (801) 323-5908 as soon as possible. If we do not hear from you on or before **June 19, 2014**, we will take whatever additional action we deem is necessary to protect DoubleTap from further abuse of its rights.

Thank you for your prompt attention to this important matter.

Sincerely,

KIRTON McCONKIE

R. Gary Winger

cc: DoubleTap, Inc.