# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **DOUBLETAP DEFENSE, LLC,** | |
| Plaintiff, | 8:18CV492 |
| vs. | |
| **HORNADY MANUFACTURING CO.,** | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on the Motion to Dismiss, ECF No. 33, filed by Defendant Hornady Manufacturing Co. ("Hornady") and the Amended Motion for Leave to Amend Complaint, ECF No. 38, filed by Plaintiff DoubleTap Defense, LLC ("DTD"). For the reasons stated below, Hornady's Motion to Dismiss will be denied and DTD will be granted leave to file its Second Amended Complaint.

## BACKGROUND

Except as otherwise noted, the following facts are those alleged in DTD's proposed Second Amended Complaint for Breach of Contract attached to DTD's Amended Motion for Leave to Amend Complaint. ECF No. 38-1.

Hornady is a manufacturer of bullets and ammunition for sportsmen, law enforcement personnel, and military professionals. Second Am. Compl., ECF No. 38-1, Page ID 110. Since 1997, Hornady has marketed and sold various products, including ammunition, bearing its registered TAP® trademark. *Id.*

On December 22, 2010, Central Holding Corporation ("CHC") filed a trademark application seeking registration of the trademark "DOUBLETAP" in connection with firearms. *Id.* at 109. On June 11, 2012, CHC assigned the registration application to

Heizer Technologies, LLC, which later changed its name to Double Tap Defense, LLC, and then to DoubleTap Defense, LLC. *Id.* At the 2012 SHOT Show, a national firearms tradeshow, DTD used the DOUBLETAP trademark to promote the forthcoming DoubleTap Tactical Pistol it intended to manufacture and sell. *Id.* The pistol has the DOUBLETAP mark etched into the pistol's barrel and frame. *Id.*

Double Tap Ammunition, Inc. (DTA) is a manufacturer of ammunition specializing in hand-loaded rounds and uncommon calibers. *Id.* at 110. Since at least 2006, DTA's packaging has displayed the unregistered marks DOUBLETAP or DOUBLE TAP. *Id.*

On January 5, 2011, Hornady brought suit against DTA alleging DTA's use of the unregistered mark infringed on Hornady's registered TAP® mark in violation of the Lanham Act. *Id.* On June 11, 2012, Hornady brought a suit against DTD alleging violations of the Lanham Act for DTD's use of the DOUBLETAP mark claiming it also infringed on Hornady's TAP mark. *Id.* at 111.

On March 6, 2013, DTD and Hornady entered into a Trademark Assignment and Licensing Agreement ("Licensing Agreement") to resolve the dispute between them. *Id.* at 112. DTD agreed to assign all right, title, and interest in the DOUBLETAP Mark[1] to Hornady; to abandon the registration application; and to pay Hornady a $25,000 license fee. *Id.* at 111. In exchange, Hornady agreed to license the DOUBLETAP Mark back to DTD and to indemnify and hold DTD harmless "FROM AND AGAINST ALL CLAIMS,

---

[1] The License Agreement pertained to the "Mark" or "Marks" which were described as "all common law or registered trademarks set forth in Exhibit B to this Agreement, together with all variations, enhancements, and updates of such trademarks, and all associated goodwill." *Id.* at 122. Exhibit B described the Trademarks as "DOUBLETAP, including word, stylized and word and design variations thereof." *Id.* at 130.

2

DEMANDS, LAWSUITS, DAMAGES, LIABILITIES, JUDGMENTS, COSTS, AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) ARISING FROM OR RELATING TO . . . LIABILITY RELATED TO TRADEMARK INFRINGEMENT CLAIMS FOR [DTD's] USE OF THE MARKS AS CONTEMPLATED BY THIS AGREEMENT." *Id.*

After execution of the Licensing Agreement, DTD alerted Hornady to the existence of at least three other businesses using the DOUBLETAP Mark and requested that Hornady, as licensor, honor its obligation to address possible third-party infringement by others who might claim an interest in the DOUBLETAP Mark. *Id.* at 112. On March 7, 2013, Hornady transmitted at least three cease-and-desist letters to companies using the DOUBLETAP Mark. *Id.* at 113-14. Hornady never demanded or requested that DTD cause DTA or any other entity or individual to assign to Hornady all interest claimed in the DOUBLETAP Mark. *Id.* at 116.

On March 26, 2013, DTD abandoned its registration application for the DOUBLETAP Mark by filing its "Notice of Express Abandonment" with the Patent and Trademark Office. *Id.* at 114.

On April 24, 2013, the United States District Court for the District of Utah ruled that DTA's unregistered mark did not infringe on Hornady's TAP mark. *Id.* at 115. Hornady appealed and on March 19, 2014, the Tenth Circuit affirmed. *Id.*

On June 9, 2014, DTA sent a cease-and-desist letter to DTD alleging DTD's use of the DOUBLETAP Mark, licensed from Hornady, infringed on DTA's unregistered marks and were likely to cause consumer confusion. *Id.* DTA demanded DTD cease all use of the DOUBLETAP Mark and/or association of the DOUBLETAP Mark in connection with promotional advertising materials, including websites, for firearms and ammunition. *Id.* at

3

115-16. DTD ceased sales of the DoubleTap Tactical Pistol and transmitted a copy of the cease-and-desist letter to Hornady, demanding it "honor the indemnify and hold harmless provision" of the Licensing Agreement. *Id.* at 116. Hornady refused to indemnify, defend, protect, and hold DTD harmless. *Id.*

On June 7, 2018, DTD filed a Complaint alleging Hornady breached the Licensing Agreement. ECF No. 1. DTD's First Amended Complaint was filed on June 8, 2018. ECF No. 2. After transfer to the District of Nebraska, Hornady filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 33. DTD seeks leave to file its proposed Second Amended Complaint. Amended Mot. Amend, ECF No. 38. Hornady opposes DTD's Motion, arguing DTD's proposed amendment is futile. Def. Br. Opp'n., ECF No. 42.

## STANDARD OF REVIEW

**A. Leave to Amend Complaint**

"[D]enial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Hillesheim v. Myron's Cards and Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (quoting *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001)). "A district court's denial of leave to amend a complaint may be justified if the amendment would be futile." *Id.* (quoting *Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013)). "An amendment is futile if the amended claim 'could not withstand a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014)).

**B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**DISCUSSION**

Hornady argues that, in section 2.1 of the Licensing Agreement, DTD undertook the express obligation to cause all third parties to assign all their interest in DOUBLETAP Marks to Hornady and, because DTD did not cause DTA to assign its interest to Hornady, DTD materially breached the contract or failed to fulfill a condition precedent. Def. Br., ECF No. 34, Page ID 29, 33. Thus, Hornady argues that DTD's First Amended Complaint, seeking enforcement of the indemnification provision against Hornady should be dismissed because DTA failed to plead that it caused DTA to assign its interest in the DOUBLETAP marks to Hornady. Hornady argues that DTD's request for leave to amend is futile for the same reason. The meaning of the following provision in the Licensing Agreement is in dispute:

> 2.1 <u>Assignment.</u> Licensee [DTD] hereby assigns to Licensor [Hornady] all right, title, and interest in and to the DOUBLETAP Marks, and any and all rights associated with the DOUBLETAP Marks, including, without limitation, any and all common law trademark rights, any and all trademark actual use applications, trademark registrations, and any other rights associated with the DOUBLETAP Marks, including the goodwill embodied with the DOUBLETAP Marks, any and all stylized and typed versions of the DOUBLETAP Marks, the right to obtain trademark registrations related thereto, and the right to sue for infringements and past infringements thereof. To the extent the Licensee [DTD] does not own all right, title, and interest in and to the DOUBLETAP Marks, Licensee [DTD] shall cause all other parties claiming an interest in the DOUBLETAP Marks, including, without limitation, DoubleTap Defense, , [sic] LLC, in which entity Licensee represents and warrants that it has a controlling interest, to assign all such interests [to] Licensor.

ECF No. 38-1, Page ID 122.

DTD argues that section 2.1 was not a condition precedent; that the Licensing Agreement did not require DTD to cause DTA to assign its interest in the DOUBLETAP Marks to Hornady; that in the alternative the Licensing Agreement was ambiguous; and that the facts in the proposed Second Amended Complaint state a plausible claim for

6

relief. Pl. Br. Opp'n., ECF No. 39, Page ID 169, 171-72. DTD also argues that even if the Licensing Agreement required DTD to cause DTA to assign its interest to Hornady, Hornady waived the condition or breach. Pl. Reply Br., ECF No. 43, Page ID 200.

"To state a claim for breach of contract in specific, a Nebraska plaintiff must plead facts showing 'the existence of a promise, its breach, damage, and compliance with the conditions precedent which activate the defendant's duty.'" *Applied Risk Servs., Inc. v. Beemac Driver Mgmt., LLC*, No. 8:15-CV-110, 2016 WL 6269619, at *1 (D. Neb. Jan. 27, 2016) (quoting *Dep't of Banking & Fin. v. Wilken*, 352 N.W.2d 145, 147 (Neb. 1984)).

"In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *Frohberg Elec. Co., Inc., v. Grossenburg Implement, Inc.,* 900 N.W.2d 32, 37-38 (Neb. 2017) (citation omitted). "A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings." *Facilities Cost Mgmt. Grp., LLC v. Otoe Cty. Sch. Dist. 66-0111*, 868 N.W.2d 67, 74–75 (Neb. 2015) (citation omitted). "A determination as to whether ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of the parties; thus, the fact that the parties have suggested opposing meanings of the disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous." *Eagle Run Square II, L.L.C. v. Lamar's Donuts Int'l, Inc.,* 740 N.W.2d 43, 48 (Neb. Ct. App. 2007) (citing *Ruble v. Reich,* 611 N.W.2d 844 (Neb. 2000); *Estate of Stine v. Chambanco, Inc.,* 560 N.W.2d 424 (Neb. 1997)). "[A] contract must be construed as a whole, and if possible, effect must be given to every part thereof." *Daehnke v. Nebraska Dept. of Social Services*, 557 N.W. 2d 17, 21 (Neb. 1996) (citations omitted). "A contract written in clear and unambiguous language

is not subject to interpretation or construction and must be enforced according to its terms." *Id.* (citations omitted). The meaning of an unambiguous contract is a question of law. *Weber v. N. Loup River Pub. Power & Irrigation Dist.*, 854 N.W.2d 263, 270 (Neb. 2014)

Upon execution of the Licensing Agreement, DTD became a mere non-exclusive[2] licensee with respect to the DOUBLETAP marks and could not have taken legal action to cause DTA to involuntarily relinquish its rights in the DOUBLETAP Marks to Hornady. *See Hollywood Collectibles Grp., LLC v. Master Cutlery, Inc.,* No. 6:14-CV-176-ORL-31KR, 2014 WL 2155214, at *3 (M.D. Fla. May 22, 2014) ("As a nonexclusive licensee, [plaintiff] lacks standing to pursue a trademark infringement claim"). The Licensing Agreement clearly contemplated that Hornady, not DTD, would be the party enforcing ownership, even as to past infringements.

Section 6.1 also supports the conclusion that section 2.1 was not intended to include DTA. Section 6.1, titled "Licensor's Ownership Rights," states:

> Licensee [DTD] acknowledges Licensor's [Hornady's] exclusive right, title, and interest in and to the Marks in the firearms and ammunition industry, including, without limitation, the DOUBLETAP Marks, and the right to license the rights set forth in this Agreement; provided, however, that the Parties acknowledge the existence of third-party trademarks that potentially infringe on the Marks, and that Licensor [Hornady] is currently engaged in litigation to resolve such use and ownership issues.

Licensing Agreement, ECF No. 38-1, Page ID 122-125. It is not reasonable to interpret the Licensing Agreement as unambiguously requiring DTD to cause DTA to assign its

---

[2] "Subject to the terms and conditions of this Agreement, Licensor hereby grants to Licensee for the term of this Agreement, a personal, limited nonexclusive, non-sublicensable, license to use the Marks for and in connection with all activities relating to the production, distribution, packaging, marketing, and sale of the Products worldwide . . .." Licensing Agreement, ECF No. 38-1, Page ID 123.

rights in the DOUBLETAP Marks to Hornady when the Licensing Agreement acknowledges that Hornady was "currently engaged in litigation to resolve such use and ownership issues" related to the potential infringement on the Marks.

The language of section 7 of the License Agreement further demonstrates that section 2.1 does not unambiguously encompass "all other parties" including DTA. Section 7 states, in part, as follows:

> SECTION 7. <u>INDEMNIFICATION.</u> EACH PARTY SHALL INDEMNIFY, DEFEND, PROTECT, AND HOLD HARMLESS THE OTHER PARTY . . . FROM AND AGAINST ALL CLAIMS, DEMANDS, LAWSUITS, DAMAGES, LIABILITIES, JUDGMENTS, COSTS, AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) ARISING FROM OR RELATING TO A PARTY'S BREACH OF THIS AGREEMENT; . . . OR, WITH RESPECT TO LICENSEE [DTD[, LIABILITY RELATED TO TRADEMARK INFRINGEMENT CLAIMS FOR ITS USE OF THE MARKS AS CONTEMPLATED BY THIS AGREEMENT.

If section 2.1 required DTD to cause all other parties to assign their rights to Hornady there would be no reason for Hornady to agree to indemnify DTD for "LIABILITY RELATED TO TRADEMARK INFRINGEMENT CLAIMS" because there could be no such liability.

## CONCLUSION

The Court rejects Hornady's contention that the unambiguous terms of the Licensing Agreement required DTD to cause all other parties claiming an interest in the DOUBLETAP marks, including DTA, to assign all such interest in the DOUBLETAP marks to Hornady.

DTD's request for leave to file the proposed Second Amended Complaint is not futile and will be granted, and Hornady's Motion to Dismiss will be denied as moot.

Accordingly,

IT IS ORDERED:

1. The Amended Motion for Leave to Amend Complaint, ECF No. 38, filed by DoubleTap Defense, LLC, is granted;

2. DoubleTap Defense, LLC, is granted leave to file its Second Amended Complaint for Breach of Contract, attached as Exhibit A to its Motion, as a separate docket entry, on or before February 21, 2019; and

3. The Motion to Dismiss, ECF No. 33, filed by Defendant Hornady Manufacturing Co. is denied as moot.

Dated this 11th day of February 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge